Dear Mr. Speaker:
This office is in receipt of your request for an Attorney General Opinion regarding video draw poker device gaming. Your question is essentially whether an act of the legislature or constitutional amendment is necessary to authorize a municipality to re-institute video poker gaming in a parish which had previously voted not to permit video poker gaming in the parish.
For reasons which follow, it is the opinion of this office that an act of the legislature would be necessary to authorize a parish or a municipality within a parish which had previously voted not to permit video poker gaming in the parish to conduct an election to re-institute video poker gaming in the parish or municipality.
The Video Draw Poker Devices Control Law was enacted by Act 1062
of the 1991 Regular Session of the Legislature, effective July 30, 1991, authorizing the licensing, regulation and operation of video draw poker devices.
Pursuant to La.R.S. 18:1300.21, on November 5, 1996, voters in each of the state's 64 parishes had on the ballot, Proposition C: "Shall the operation of video draw poker devices be permitted? Yes () No ()." The majority of voters in 33 parishes voted "No" to Proposition C.
In the 33 parishes voting not to permit the operation of video draw poker devices, in accordance with La.R.S. 18:1300.21 D., video draw poker device gaming was discontinued. However all existing video poker licenses were allowed to be renewed twice after the election and therefore as of this date all video poker gaming activity has ceased in those parishes and no licenses to conduct video poker gaming have been issued in those parishes after June 30, 1999.
La. Const. Art. XII § 6 C.(1), which became effective October 15, 1996, provides:
 C. Gaming, Gambling, or Wagering Referendum Elections. (1)(a) No law authorizing a new form of gaming, gambling, or wagering not specifically authorized by law prior to the effective date of this Paragraph shall be effective nor shall such gaming, gambling, or wagering be licensed or permitted to be conducted in a parish unless a referendum election on a proposition to allow such gaming, gambling, or wagering is held in the parish and the proposition is approved by a majority of those voting thereon.
 b. No form of gaming, gambling, or wagering authorized by law on the effective date hereof shall be licensed or permitted to be conducted in a parish in which it was not heretofore being conducted, except licensed charitable gaming which may be conducted in any parish provided it is conducted in compliance with the law, pursuant to a state license or permit unless a referendum election on a proposition to allow such gaming, gambling, or wagering is held in the parish and the proposition is approved by a majority of those voting thereon.
* * *
Article XII § 6 C.(4) provides:
 (4) Notwithstanding Article III, Section 12 or any other provision of this constitution, the legislature by local or special law may provide for elections on propositions relating to allowing or prohibiting one or more forms of gaming, gambling, or wagering authorized by legislative act.[1]
La. Const. Art. XII § 6 C.(1)(a) and (b) expressly limit the authority of the legislature by conditioning the effect of any law authorizing a new form of gaming and the conducting of certain forms of gaming on a referendum election being conducted in the parish and a majority of voters voting in favor of the proposed gaming activity.
It would appear that neither Art. XII § 6 C.(1)(a) nor (b) would apply to the question presented for review.
Video draw poker device gaming was authorized by law on July 30, 1991, therefore for the purposes of Art. XII § 6 C.(1)(a), the operation of video draw poker devices was not a new form of gaming on the effective date of the Paragraph, October 15, 1996.
With respect to Art. XII § 6 C. (1)(b), except for West Carroll Parish, video poker devices were in operation on October 15, 1996 or "heretofore being conducted" in all of the state's parishes.
As a general rule, state constitutions, unlike the Federal Constitution, are not grants of power but rather limitations of power and in absence of a particular constitutional provision limiting the power of the legislature to act, a legislative enactment cannot be invalidated as contrary to the state's constitution. La. Dept. of Agriculture andForestry, 728 So.2d 1254, 98-1587 (La. 3/2/99), Hainkel v. Henry,313 So.2d 577, (La. 1975).
Accordingly there would appear to be no constitutional provision limiting the authority of the legislature to legislate with respect to video draw poker device operation in any municipality or parish in the state, except West Carroll Parish which would be subject to the provisions of Art. XII § 6 C.(1)(b).
La. Const. Art. XII § 6 C.(4) specifically authorizes the legislature to provide for elections on propositions relating to allowing one or more forms of gaming authorized by legislative act.
And further La.R.S. 18:1300.22, effective July 15, 1997, provides in part:
 § 1300.22. Calling of gaming elections as required by the constitution
 A. Notwithstanding any other law to the contrary, except as otherwise permitted in Subsection B of this Section, any election required by Article XII, Section 6(C) of the Constitution of Louisiana may be called only by an enactment of the legislature which specifically authorizes each such election.
Although § 1300.22 A. is limited to "elections required by Article XII, Section 6 (C)", a legislative enactment specifically authorizing a gaming election would appear to be a necessary and appropriate means of facilitating local approval and authorization of any form of legalized gaming activity.
In conclusion, it is the opinion of this office that the legislature has authority, and is not prohibited by any provision of the Constitution, to enact legislation authorizing a parish or a municipality within a parish, in which on November 5, 1996 a majority of the voters in the respective parish voted to discontinue the operation of video draw poker devices, to conduct a referendum election to permit video draw poker device operation in the municipality or parish.
Hopefully this Opinion addresses your concerns. Please feel free to contact this office if we may be of further assistance.
Sincerely,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ________________________ Thomas A. Warner, III Assistant Attorney General
Date Received:
Date Rel: February
Thomas A. Warner III Assistant Attorney General
[1] Article III, Section 12 otherwise prohibits the enactment of a local or special law "for the holding and conducting of elections".